

MICHAEL A. CARDOZO
*Corporation Counsel*

# THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, N.Y. 10007

STEVE STAVRIDIS
*Senior Counsel*
Special Federal Litigation Division
Tel.: (212) 788-8698
Fax: (212) 788-9776

January 17, 2012

BY ECF
Honorable Cheryl L. Pollak
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  Jleesa Livingston, et ano v. City of New York, et al.
11 CV 777 (SJ)(CLP)

Your Honor:

I am a Senior Counsel in the New York City Law Department representing
defendant the City of New York ("City") in the above-referenced matter.[1]  I respectfully submit
this letter in opposition to plaintiffs' letter motion for sanctions dated January 9, 2012.

The basis of plaintiffs' motion is that the City has failed to respond to plaintiffs'
outstanding discovery demands.  This, however, is clearly not the case.  By way of background,
following a conference held on October 14, 2011, the Court directed plaintiff to serve upon the
City a "revised list of information needed in discovery" by October 17, 2011. (ECF Docket No.
11.)   The order was issued because of the City's request at the conference for more focused
discovery given that the facts of this case were largely undisputed rendering most of plaintiffs'
discovery demands (dated May 27, 2011) unnecessary.  Specifically, with respect to plaintiff
Jleesa Livingston, it was resolved that the only factual issues in dispute were 1) whether she was
strip searched, and 2) whether officers used excessive force during the course of arresting her.[2]
Accordingly, with respect to Jleesa Livingston, the discovery that was needed at that juncture
was information concerning the identity of the officer(s) who allegedly strip searched plaintiff

---

[1] The complaint has recently been amended to name police officers James Giblin, Bryan Glacken and William Hart
as defendants.  The answer to the amended complaint is due on January 19, 2012.

[2] With respect to her false arrest claim, Jleesa was arrested when officers entered her home pursuant to search
warrant.  T Jleesa was then taken to the Precinct where she was held for two hours before being released with no
charges being filed.  The only issue, therefore, is a legal one concerning the propriety of holding her for the that
length of time.

and the identity of the officer(s) who allegedly used force on her. As for plaintiff Jaquend Livingston (Jleesa's son), there were no factual disputes at all concerning his arrest as both parties are in agreement as to where he was at the time of search warrant in relation to the contraband that was found in the apartment, and that the District Attorney's office declined to prosecute him based on this information. Accordingly, the only critical records needed for Jaquend were the records on him from the District Attorney's records, and documents indicating how long he was in custody before he was released.

By letter dated October 14, 2011 (see attached), plaintiffs submitted their revised discovery demands. The City timely responded to these demands on November 16, 2011 by producing documents NYC 35-73 via email, followed by a hand delivery of the Civilian Complaint Review Board ("CCRB") audio file on November 18, 2011. Included in this production were the On Line Booking Sheets concerning this incident (NYC 51-54), which is responsive to the first document request in plaintiffs' letter; Memo Book entries for the arresting officer, PO Giblin (NYC 35-36), which is responsive to plaintiffs' second document request;[3] the OLPA records for Jaquend (NYC 37-35), which is responsive to plaintiffs' fourth request; and the District Attorney File (NYC 73-74). The only documents not produced were the "return on warrant" document (plaintiffs' third document request), which has to this date not been located, and the "ESU report," which has since been located and provided to plaintiff as NYC 88-89. On November 22, 2011, the City sent via email personnel and disciplinary records of PO Giblin (NYC 75- 88).[4] Accordingly, contrary to plaintiffs' representations, this Office has produced all discovery pursuant required of it by the October 14, 2011 order, and to the extent that documents are still outstanding (post warrant report; officer memobooks, etc.), it is because they have not yet been located or received as of yet by our Office.

The City has also complied with the Court's order dated December 14, 2011 inasmuch as it has supplied the ESU ("Emergency Services Unit") records concerning this incident, which allowed plaintiff to amend the complaint to name additional defendants by his Court imposed deadline. With the production of these documents, plaintiff has provided all outstanding discover documents referenced by plaintiff in his deficiency letter, and all the arrest documents related to the claims of the two plaintiff herein.

However, to the extent plaintiffs are asserting that they are due responses to discovery demands dated May 27, 2011, the City maintains that these demands were withdrawn in place of the new (and more reasonable) demands served by the letter dated October 14, 2011. As noted above, the City indicated in clear terms at the October 14th conference that the discovery demands initially served by plaintiffs were highly disproportionate to the issues raised by this case (see attached), particularly since there was no dispute as to the facts surrounding plaintiffs' arrest. Indeed, the City indicated that it was considering moving to dismiss the false arrest claims on a 12(c) motion as there was no fact dispute concerning the circumstances of the arrest rather than have to answer plaintiff's excessive discovery demands. This dispute,

---

[3] The remaining officers have indicated they have no substantive memobook entries. Copies of their memobooks reflecting this fact will be provided as soon as they are received.

[4] The City has redacted cases that relate to open matters under the deliberative process privilege. These redactions are not the subject of this motion.

according to the undersigned's recollection of the conference is what prompted the Court to issue the order directing plaintiff to serve a set of "revised demands" upon the City so as to tailor discovery to the legitimate needs of this case. Moreover the documents that have come to light since the October 14th conference have added more validity to the City's concerns about this case and its suspicions about plaintiffs' motives. Specifically, the CCRB recording of Jleesa's interview clearly revealed that plaintiff was *not* strip searched, as she originally alleged in her complaint. Though plaintiffs' counsel has since withdrawn Jleesa's strip search claim, this only came after the CCRB audio came to light.[5] Had it not been for the CCRB recording, the City would be still defending this claim. Yet rather than offering an apology for bringing a false strip search claim, plaintiffs have found it more fitting to seek monetary sanctions against the City for failing to sign a stipulation consenting to its dismissal.

Accordingly, the Court should deny plaintiffs' motion for sanctions as it has complied with all Court orders issued to date. To the extent the Court deems that the City must respond to plaintiffs' May 27, 2011 discovery demands. This Office requests that it have until January 24, 2012 so that it can respond on behalf of all defendants[6] thereby avoiding duplicative discovery demands and production afterwards.

I thank the Court for its consideration of the foregoing.

Respectfully submitted,

/s/

Steve Stavridis
Assistant Corporation Counsel
Special Federal Litigation Division

cc:     By ECF
        Afsaan Saleem, Esq.

---

[5] The City has similar concerns with respect to Jleesa's excessive force claims as she is recorded by the CCRB as saying that she was merely pushed away from the entranceway to her son's bedroom by the ESU shield officer and that she suffered no injuries as a result of the push. The CCRB has determined that based on the Jleesa's own account of the incident, the officers acted properly in their actions towards her and resultantly have exonerated the ESU officers. Notwithstanding this audio recording, the finding by the CCRB, and well settled case law concerning what constitutes excessive force, plaintiff's counsel is still pursing the excessive force claim.

[6] The answer for the police officer defendants is due on January 19, 2012



305 Broadway, 14th Floor
New York, NY 10007
Tel: (212) 323-6880
Fax: (212) 323-6881

Gabriel P. Harvis
gharvis@harvisandsaleem.com

Afsaan Saleem
asaleem@harvisandsaleem.com

October 14, 2011

**BY E-MAIL**
Steve Stavridis, Esq.
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007

Re:    *Jleesa Livingston, et. al. v. City of New York, et al.*, 11 CV 0777 (SJ)(CLP)

Dear Steve:

Pursuant to Magistrate Pollak's order of today, I write to outline a revised list of what plaintiff is seeking in discovery.

**Names of Officers involved in incident**

Please supplement your Rule 26(a) disclosures to identify the officers' involved in this case. Ms. Livingston claims she was strip-searched by an African-American female officer who was about 5'4 to 5'5, was stocky and wore her hair in braids on the date of the incident. In addition, as stated in the Complaint, Ms. Livingston was pushed to the ground by a member of the ESU entry team who was carrying a shield. Please identify which officer came into contact with Ms. Livingston. If you cannot identify which officer it was please provide plaintiff with the names of the officers on the ESU team that entered the apartment and could have come into physical contact with Ms. Livingston. Finally, you have identified Officer Paul Giblin as the arresting officer. Please identify if there was any other officer, other than Officer Giblin, involved in the decision to arrest Ms. Livingston and Jaquend Livingston. The identity of those officers are necessary as they will be liable for failing to intervene in the unlawful arrests of the plaintiffs.

**Disciplinary and Personnel Records of Officers involved in incident**

As you have already identified Officer Paul Giblin, and since he will definitely be named as a defendant, please provide plaintiff with his personnel and disciplinary records. The disciplinary records should include his full CPI Index, IAB History, CCRB History as well as the underlying files where there is an allegation of a false arrest or that the officer gave a false statement. Once you have identified the other officers involved in the incident please provide plaintiff with their personnel and disciplinary records as well.

**Documents that are still outstanding**

A review of the limited discovery that the City produced reveals that there are several items of discovery that are outstanding. Please provide plaintiff with the following documents:

1. Online Booking Sheets (and scratch copies) for the plaintiffs;

2. Memo Book entries of all the officers involved in the incident;

3. The "return on warrant" sheet prepared by either ESU or the arresting officers. This document should identify what items of contraband were recovered as a result of the search and/or where they were recovered;

4. The OLPA History screen or screen that shows how much time Jaquend was in custody before he was released from Central Booking;

5. The District Attorney's file, which should include a Declined Prosecution Memo for Jaquend;

6. The ESU report which states which ESU officer contacted which occupant of the apartment and where they were located.

**Discovery Responses**

Pursuant to Magistrate Pollak's instruction, plaintiffs will agree to hold off pursuing the following items of discovery at this time:

Interrogatories 10, 14, and 18.

Document Requests 13, 14, 15, 24, 25, 26, 36 and 37.

Please provide your discovery responses and the accompanying documents as soon as possible as the discovery responses were due July 1, 2011.

**Names and Citations of Cases**

At today's status conference you identified a Judge Patterson decision, <u>Cammick v. City of New York</u>, 1998 LEXIS 18006. Please provide the docket entry number for this case or a Westlaw Cite for this case. In addition, you stated that you had other cases that stood for the proposition that the police have probable cause to arrest all occupants of a household on the basis that they are all presumed to have "constructive possession." Please provide plaintiff with these cases as soon as possible. Thank you.

Yours truly,

Afsaan Saleem

## Stavridis, Steve

| | |
|---|---|
| **From:** | Stavridis, Steve |
| **Sent:** | Tuesday, November 22, 2011 1:34 PM |
| **To:** | 'Afsaan Saleem' |
| **Subject:** | RE: Livingston (Overdue discovery) |

**Attachments:** Livingston letter.pdf

I agree only with points 1 and 5 below. Our discovery agreement was memorialized in your own letter attached hereto: "I write to outline a revised list of what plaintiff is seeking in discovery."
As for remaining items, ESU records are forthcoming, and PO Giblin made the decision of who to arrest. I will provide CCRB history and personnel records for Giblin in advance of the conference.

I also remind you that I haven't received any response to the demands I served upon you. Please produce in advance of the conference.

---

**From:** Afsaan Saleem [mailto:asaleem@harvisandsaleem.com]
**Sent:** Tuesday, November 22, 2011 1:01 PM
**To:** Stavridis, Steve
**Subject:** Re: Livingston (Overdue discovery)

Steve,

No, we agreed at the conference for me to send you a revised list of information needed in discovery. You were ordered to respond by November 18th. You provided me with some documents. The rest are still outstanding, including your discovery responses. See below:

1. The ESU documents and names of officers
2. The personnel and disciplinary records for Giblin (as well as: 1) the ESU officer who pushed Ms. Livingston with a shield, 2) the officers who failed to intervene in the use of force against Ms. Livingston and 3) any other officers involved in the decision to arrest Ms. Livingston and Jaquend)
3. Documents 1, 2 and 6 that were listed in Documents still outstanding
4. Discovery Responses (which are still outstanding)
5. The cases that you mentioned at the court conference which you were relying to formulate your No Pay position.

Thanks.
Afsaan.



Download vcard

Afsaan Saleem, Esq.
Harvis & Saleem LLP
305 Broadway, 14th Floor
New York, NY 10007
Tel (212) 323-6880
Fax (212) 323-6881

www.harvisandsaleem.com

On Nov 22, 2011, at 12:43 PM, Stavridis, Steve wrote:

> I gave you everything except for ESU documents, which I don't have yet. This is what was agreed
> upon at the conference. What else do you need?

11/25/2011

**From:** Afsaan Saleem [mailto:asaleem@harvisandsaleem.com]
**Sent:** Tuesday, November 22, 2011 12:42 PM
**To:** Stavridis, Steve
**Subject:** Re: Livingston (Overdue discovery)

Steve,

Please provide me with a response to my October 14th letter as well as a response to my discovery demands. These were due November 18th.

Thanks.
Afsaan.



Download vcard

**Afsaan Saleem, Esq.**
**Harvis & Saleem LLP**
305 Broadway, 14th Floor
New York, NY 10007
Tel (212) 323-6880
Fax (212) 323-6881

www.harvisandsaleem.com

On Nov 16, 2011, at 6:37 PM, Stavridis, Steve wrote:

> Attached are documents responsive to your demands as well as the CCRB report on the incident. I have also obtained the CCRB audio. Jleesa describes the encounter in detail and does not allege anything about a strip search. In fact, it appears that the officers were accommodating to her needs. We can discuss further after you get the audio, which should be on Friday. I may not have the ESU documents for another week cause the contact person for those records has been out for a while. In any event, as per the CCRB report and audio, there was no use of force by ESU. Contact was made with the shield when she stood in the way of ESU going into a room. Such force is proper and is within guidelines.
>
> Steve Stavridis
> Senior Counsel
> New York City Law Department
> Office of the Corporation Counsel
> Special Federal Litigation Division
> 100 Church Street, Room 3-159
> New York, New York 10007
> (212) 788-8698
> (212) 788-9776 (fax)
> sstavrid@law.nyc.gov

**From:** Afsaan Saleem [mailto:asaleem@harvisandsaleem.com]
**Sent:** Wednesday, November 16, 2011 3:45 PM
**To:** Stavridis, Steve
**Subject:** Re: Livingston (Overdue discovery)

Oops. I guess I jumped the gun. Ok, I will await Friday then. Sorry about that.

**Afsaan Saleem, Esq.**
**Harvis & Saleem LLP**
305 Broadway, 14th Floor



New York, NY 10007
Tel (212) 323-6880
Fax (212) 323-6881
www.harvisandsaleem.com

On Nov 16, 2011, at 3:42 PM, Stavridis, Steve wrote:

Responses are due this Friday (see below).

**1:11-cv-00777-SJ-CLP Livingston et al v. City of New York et al**
**Discovery Hearing 11**

**Docket Text:**
MINUTE ENTRY for Discovery \ Status Conference proceeding held before MJ Pollak on 10/14/2011. By 10/17/11, plaintiff to send revised list of information needed in discovery. Response 11/18/11. Plaintiff to provide 160.50 release by 11/18/11. Monell discovery held in abeyance. Conference set for **11/28/11 @ 11:00 AM.** (Caggiano, Diana)

**From:** Afsaan Saleem [mailto:asaleem@harvisandsaleem.com]
**Sent:** Wednesday, November 16, 2011 3:41 PM
**To:** Stavridis, Steve
**Subject:** Livingston (Overdue discovery)

Steve,

I still have not received your discovery responses on Livingston or a response to my October 14th letter. Please provide them to me as soon as possible as they are overdue and we have a conference on this case after Thanksgiving.

Thanks.
Afsaan.



**Afsaan Saleem, Esq.**
**Harvis & Saleem LLP**
305 Broadway, 14th Floor
New York, NY 10007
Tel (212) 323-6880
Fax (212) 323-6881

www.harvisandsaleem.com

<Livingston 35-73 as served 11-16-11.pdf>

11/25/2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

JLEESA LIVINGSTON and JAQUEND
LIVINGSTON,

                                        Plaintiff,

                    -against-

CITY OF NEW YORK; JOHN and JANE
DOE 1 through 10, individually and in their
official capacities, (the names John and Jane Doe
being fictitious, as the true names are presently
unknown),

                                        Defendants.

------------------------------------------------------------------x

**PLAINTIFF'S FIRST SET
OF INTERROGATORIES
AND REQUESTS FOR
PRODUCTION OF
DOCUMENTS TO
DEFENDANTS**

11 CV 0777 (SJ)(CLP)

      PLEASE TAKE NOTICE that, pursuant to Rules 26 and 33 of the Local

Rules of the United States District Court for the Southern District of New York (the

"Local Rules") and Rule 33 of the Federal Rules of Civil Procedure, plaintiffs request

that defendants answer under oath, within thirty days, the following interrogatories.

Plaintiffs further request, pursuant to Rule 26 of the Local Rules and Rule 34 of the

Federal Rules of Civil Procedure, that defendants produce for copying and inspection

at Harvis & Saleem LLP, 305 Broadway, 14th Floor, New York, New York, within

thirty days, all documents and materials described herein.

      These interrogatories and document requests are continuing. If at any time

after service of answers hereto, and prior to the trial of this action, defendants obtain

or become aware of additional information pertaining to any of these interrogatories

or document requests, the disclosure of which may be required pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, defendants shall, within thirty days, and in no event later than five days before trial, serve upon the undersigned supplemental sworn written answers setting forth such additional information.

## DEFINITIONS

Plaintiff hereby incorporates the Uniform Definitions In Discovery Requests Contained in Rule 26.3 of the Local Rules in addition to the following definitions:

1.    Defendants: The term "defendants" means all defendants herein collectively.

2.    Communication: The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3.    Document: The term "document" encompasses all items within the scope of Rule 34(a) of the Federal Rules and Rule 26.3(c)(2) of the Local Rules. The term "document" includes, but is not limited to, all written or graphic matter, public and private, of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, sent, received, redrafted, or executed, including without limitation: writings, correspondence, communications, electronic mail, letters, telegrams, telexes, cables, contracts, applications, agreements, leases, handwritten notes, drafts, memoranda, proposals, log books, transcripts, records, reports, analyses, studies, summaries,

surveys, appraisals, graphs, drawings, charts, calculations, computer programs, tables, projections, microfilm, microfiche, flow charts, tape and tape recordings, databases, computer disks, CD-ROMs, computer printouts, sound or video tapes, computer tapes and disks, information contained in any computer, videos, audio magnetic tape or mechanical devices or machines (although not yet printed out), transcriptions of audio or video recordings, data sheets, data processing, checks, check stubs, check registers, promissory notes, articles, books, notebooks, brochures, photographs, clippings, instructions or procedural manuals, minutes, notices, invoices, bills, statements of account, expense reports, bank drafts, evaluations, worksheets, working papers, diary entries, desk calendar entries, appointment calendars, statements, date books, telephone logs, telephone message slips, summaries and records of telephone conversations, personal conversations and/or meetings, court papers, schedules, lists, indexes, or any other writing or recording of any kind, or any other tangible sources of information and data responsive to the request, whether written, printed, typed, photocopied, computer or electronically printed or stored, or recorded, or reproduced by any other mechanical or electronic process, or written or produced by hand, or otherwise available as tangible material from any source, and of any kind, form, or nature, whether sent or received or neither, including all underlying, supporting or preparatory materials, versions or drafts, and originals, identical copies, and all non-identical copies of all writings of any nature whatsoever. Any copy of a document,

which contains information or markings not contained on the original of the documents, should be considered a separate document.

4. <u>Identify (with Respect to Persons)</u>: When referring to a person, to "identity" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known address, and when referring to a natural person, additionally, the present or last known place of employment, and when referring to a natural person who is a uniformed member of a police or correction department, the current rank and shield number. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

5. <u>Identify (with Respect to Document)</u>: When referring to documents, to "identify" means to give, to the extent known, the (i) type of document. (ii) general subject matter, (iii) date of the document, and (iv) author(s), addressee(s) and recipient(s), or, alternatively to produce such document(s) for inspection if not called for in the Document Request.

6. <u>Identify (with Respect to Communications)</u>: A request to "identify" a communication means: (i) to state whether it was written or oral, and if written, to identify each document comprising or evidencing such communication; (ii) to state the date and place of such communication, (iii) to identify each individual

participating therein and each individual who was present at the place or places of such communication, or if now known, the substance of such communication.

7. <u>Parties</u>: The terms "plaintiff" and "defendants" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

8. <u>Person</u>: The term "person" is defined as any natural person or any business, legal or governmental entity, corporation or association.

9. <u>Concerning</u>: The term "concerning" means relating to, referring to, describing, evidencing or constituting.

10. <u>Any/All/Each</u>: The term "any" includes the word "all." The terms "all" and "each" shall be construed as all and each.

11. <u>And/Or</u>: The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

12. <u>Number</u>: The use of a singular form of any words includes the plural and vice versa.

13. <u>Incident</u>: The term "incident" is used broadly herein to mean the incident forming the basis of the instant action, and includes the facts and events

alleged in plaintiff's complaint, and prior and subsequent events and occurrences that are pertinent thereto, either directly or indirectly, including, without limitation, the search of plaintiffs' house, the removal of Ms. Willie Mae Coleman outside the house during the search, the transportation of the plaintiffs to the precinct, plaintiffs time at the precinct, the transportation of the plaintiffs to Central Booking, and the subsequent prosecution of plaintiffs, up to the dismissal of their criminal cases.

## INSTRUCTIONS

1.     In answering the following interrogatories and responding to the following document requests, (collectively the "request"), you shall furnish all information that is available to you, including information in the possession, custody, or control of your attorneys, accountants, investigators, experts, representatives, or other agents.

2.     If, in answering the following, you are unable to answer fully, after exercising due diligence to obtain the information to do so, you shall answer said interrogatory to the fullest extent possible, specifying your inability to answer the remainder, describing the efforts taken by you to obtain the information or fully answer said interrogatory, and stating whatever information or knowledge you have concerning the unanswered portion therein.

3.     If, in answering the following interrogatories, you state in whole or part that "I do not know" or "unknown" or otherwise any similar lack of knowledge, you

shall state in detail all efforts made to obtain the information requested, the nature of any continuing efforts in that regard, and by whom any such efforts were and are being made.

4.    If any document responsive to the requests has been lost, destroyed, or is otherwise unavailable, describe and identify each such document by stating in writing: (i) the name(s) of the authors(s), the name(s) of the person(s) who received the original and all copies and the date and subject matter, (ii) the last known custodian of the document, (iii) the incident, event, or occurrence during which document was lost, destroyed, or otherwise became unavailable, (iv) each person having knowledge of the circumstances of it being lost, discarded or destroyed, and (v) your efforts to locate each such document.

5.    If a claim of privilege is asserted with respect to any document, or you refuse to disclose any document requested herein on any other ground, state the basis for your claim that such document need not be disclosed with such specificity as will permit the Court to determine the legal sufficiency of your objection or position, and, for each such document, identify:

      a.  whether the document contains a request for legal advice and, if so, identify the person who requested the legal advice;

      b.  whether the document contains advice as to the meaning or application of particular laws or rules in response to such request;

c. any further information to explain and support the claim of privilege to permit the adjudication of the propriety of that claim;

d. the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked;

e. the type of document, e.g., letter to memorandum; the general subject matter of the document; and such other information as is sufficient to identify the document for subpoena duces tecum, including, where appropriate, the author, addressee, and any other recipient of the document, and where not apparent, the relationship to the author, addressee, and other recipient to each other.

6. If answering these requests you claim any ambiguity in interpreting either the request or a definition instruction applicable thereto such claim shall not be utilized by you as a basis for refusing to respond; rather you shall set forth in a part of your response to such a request the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

7. Defendants shall respond separately and completely to each interrogatory, document request and request for admission or subdivision thereof, setting forth the question in full followed by each answer.

8. With respect to the documents requested, this request seeks production of all documents described, in their entirety, along with any attachments, drafts and nonidentical copies.

9. Questions regarding the interpretation of this request shall be: (i) organized and designated to correspond to the categories in the requests, or (ii) produced in a form that accurately reflects how they are maintained by you in the normal course of business, including but not limited to the following:

    a. that all associated file labels, file headings and file folders be produced with the responsive documents from each file and that each file be identified as to its owner(s) or custodian(s);

    b. that all pages now stapled or fastened together be produced stapled or fastened together; and

    c. that all documents which cannot legibly be copied be produced in their original form.

10. Except where otherwise indicated, the period of time covered by these requests is from the date of the incident alleged in the complaint to the dates these requests are answered.

11. This request is to be considered as continuing and defendants are requested to provide, by the way of supplementary responses hereto, such additional information as they or any persons acting on their behalf may hereafter obtain that will augment, clarify, or otherwise modify the responses now given to this request. Such supplementary responses are to be filed and served upon counsel for plaintiff within thirty days after receipt of such information or documents.

12. All documents produced in response to any request shall be served via email or other electronic media, in accordance with Mayoral Directive 96-2.

# INTERROGATORIES

1.     Identify all persons that assisted or provided information in response to plaintiffs' discovery demands.

2.     Identify any and all officers, and any other City of New York employees who were present at and/or participated in the Incident or any portion of the Incident, and set forth separately their true, full and correct names, badge, shield or identification numbers, work addresses, present addresses, and whether they will be called as trial witnesses by defendants, including but not limited to:

       a.   Each and every officer present at or near the location of the acts set forth in the complaint;

       b.   Any and all supervisors who authorized, reviewed, critiqued, witnessed, or conferred with the New York City Police Department ("NYPD") or otherwise had knowledge of the incident;

       c.   Each and every officer that has knowledge of the allegations levied against plaintiffs by any police officer in connection with the incident;

       d.   Each and every officer that made the decision to arrest plaintiffs;

       e.   Each and every officer that provided information concerning plaintiffs' arrest to the District Attorney's office;

       f.   The arresting officer as to each plaintiff;

       g.   Each arresting officer's partner or partners;

       h.   The commanding officer of the squad or unit of the NYPD to which the individuals identified above, were assigned, including both (i) the ranking officer at the scene of the arrest of plaintiffs, and (ii) any higher-level supervisor to whom the ranking officer at the scene

reports;

i. The desk officer of the precinct to which plaintiffs were brought following their arrest;

j. The officer or officers who took custody of plaintiffs, transported them to or from the precinct, or played any role in their processing at that precinct after their arrest, including all officers who interacted with plaintiffs in their cells;

k. The officer or officers who took custody of plaintiffs, transported them to or from Central Booking, or played any role in his processing at Central Booking;

l. All civilians present at any point during the incident.

3. Identify all persons that defendants have communicated with regarding any matter at issue in this litigation.

4. Identify each occasion on which defendants or any persons identified in response to Interrogatory No. 2 have given testimony or statements regarding the subject of this lawsuit.

5. Identify all persons, including civilian witnesses, medical personnel, and other employees of the City of New York, who witnessed the Incident or any portion of the Incident, including but not limited to, all persons known to be at or near the location of the Incident, and set forth separately their true, full and correct names, whether they have given a signed statement and/or report to the defendants, their attorneys, or their agents, and whether they will be called as trial witnesses by defendants.

6. If Interrogatory No. 5 was answered in the affirmative as to whether a

statement or report was made, give:

    a. The name, badge or identification number, and present address of the person who prepared each such report/statement;

    b. The name, badge or identification number and present address of the person or persons for whom each such report/statement was prepared;

    c. The date, time and place where each such report was prepared; and

    d. The name, badge or identification number, and present address of the present custodian of each such report.

7. State whether any of the defendants and officers identified in response to Interrogatory No. 2 were questioned by Internal Affairs, CCRB, District Attorney's Office, and/or any other federal, state, or local law enforcement or other agency about the incident set forth in the complaint.

8. If the answer to the Interrogatory No. 7 is in the affirmative, set forth:

    a. The name, title and shield number and address of the person(s) making the inquiry;

    b. The date and time of said inquiry, and;

    c. The substance of such inquiry;

    d. All documents, tape recordings or other recordings of the inquiry;

    e. The custodian of these documents, recordings or other recordings;

    f. A general description of these documents and/or recordings.

9. Identify all experts that defendants expect to call at the time of trial.

10. Identify every document concerning each of the individual defendants' employment with the City.

11. Identify all documents, including, without limitation, photographs,

videotapes, and audiotapes, whether in your possession, custody or control, or not, that relate to the incident and the investigation and prosecution of plaintiff, including a description of such documents, their location, and their custodian.

12.    For each individual identified in response to Interrogatory No. 2, state each and every instance in which they have had a complaint lodged against or concerning them before any agency, IAB or any other monitoring group; including any entity and/or other New York State or City agency or any prosecutor's office and/or the Legal Aid Society, including the Civilian Complaint Review Board ("CCRB"). Defendants shall not withhold information on the basis of the need for a confidentiality stipulation as plaintiffs' counsel is prepared to enter into a stipulation with Corporation Counsel in time for the stipulation to be endorsed prior to defendants' responses being served.

13.    For each individual identified in response to Interrogatory No. 2, identify each notice of claim and/or lawsuit against or concerning each individual by claim/index number, dates and titles and identify the claimants/plaintiffs or set forth the custodian, location and general description of the relevant documents.

14.    State whether there is any training, experience or educational prerequisites to employment as a Police Officer and, if yes, state what they were at the time of the hiring of the individuals identified in response to Interrogatory No. 2 and

what, if any, waivers were received and set forth the custodian, location and general description of the relevant documents.

15.     State whether any database or records were/are compiled as to each individual identified in response to Interrogatory No. 2 concerning complaints, possible complaints, misconduct, suspected misconduct, or any other possible misconduct, and if yes, set forth the name of the database and by whom or what it is maintained.

16.     State whether the individuals identified in response to Interrogatory No. 2 have had any prior commands or assignments within the NYPD.  If so, state the reason for each transfer or reassignment and the department location of said transfer or reassignment.

17.     Do you contend that there existed probable cause to stop, seize, search and arrest plaintiffs?  If so, state each fact that supports your conclusion that probable cause existed.

18.     Was training provided by the City of New York to the individuals identified in response to Interrogatory No. 2 as to (1) the proper way to execute a search warrant; (2) when a suspect is deemed to be in constructive possession; (3) investigating suspected drug possession; (4) determining whether or not there is probable cause for an arrest and seizure of a criminal suspect; (5) the elements of the crimes of criminal possession of marijuana, obstructing governmental administration

and disorderly conduct; and (6) how many arrests each officer is required to make in a given week, month or year, also known as an arrest quota?

If so, identify and describe:

    a. the nature and substance of said training, including the identity of each instructor, lecturer, or teacher who administered said training and the dates of said training; and

    b. any materials, manuals, guidebooks, course outlines, brochures, regulations, charts, films, audiotapes, or other audiovisual material or teaching aids used in said training.

19. State whether the individuals identified in response to Interrogatory No. 2 were ever employed as law enforcement officers prior to their New York City Police Department employment.

If so, identify and describe:

    a. the name and address of each such employer;
    b. the date of employment;
    c. the duties performed in such employment; and
    d. the reasons for the ending of the previous employments.

20. State whether the individuals identified in response to Interrogatory No. 2 have ever pled guilty or have ever been convicted of any criminal offense, if so, set forth:

    a.    the date;
    b.    place; and
    c.    nature of the case.

## DOCUMENT REQUESTS

1.      Produce all documents relevant to this action that are or were in the possession of any agency of the City of New York, including but not limited to the NYPD, or that reflect the activities of any employee of the City of New York that are relevant to this action and can be obtained by defendants.  If defendants claim that any document identified in response to this request cannot be produced or obtained, defendants are to treat this request as an interrogatory and are to state the existence, custodian, location and a general description of the document (*see* Local Civil Rule 33.3 (a)).  The documents at issue include, but are not limited to, the following:

   a. Memo Books of the officers identified in response to Interrogatory No. 2;
   b. Roll Call(s) for the precinct(s) to which the officers identified in response to Interrogatory No. 2 were assigned;
   c. Command Log(s) for the precinct(s) to which the officers identified in response to Interrogatory No. 2 were assigned;
   d. Arrest Reports;
   e. Online Booking System Arrest Worksheets, including drafts and scratch copies;
   f. Desk Appearance Tickets;
   g. Desk Appearance Ticket Eligibility Forms;
   h. Complaint Reports (UF-61), including drafts and scratch copies;
   i. Prisoner Movement Slips;
   j. Photographs of plaintiffs;
   k. Property Vouchers;

16

l. BADS Checks of plaintiffs, including, without limitation, OLPA Report and BADS Arrest History report;

m. Sprint Report(s);

n. OCA Checks of plaintiffs;

o. Tactical plan;

p. Search warrant;

q. Emergency Service Unit reports;

r. Return on warrant reports;

s. The affidavit or affidavits or any other documents in support of issuance of the warrant for the search of plaintiffs' dwelling, presented to the Judge who signed the search warrant;

t. The transcript of any proceedings before the Judge who signed the search warrant, conducted in connection with the application for the issuance of the warrant;

u. All affidavits, reports, memoranda, transcripts or other documents reflecting the allegations of any confidential informant (CI) or other informant or undercover officer, upon whose word the search warrant was sought;

v. All documentation reflecting the extent of compliance with the NYPD's requirements for determining whether to obtain and also whether to execute the warrants for the search of plaintiffs' dwelling, including, but not limited to, (a) all pre-execution documentation required by NYPD Patrol Guide (PG) 212-75 (5), implementing Commissioner's IO-40, 8/25/03, (b) the Formal Pre-Execution Plan and other data required by IO-41, 8/25/03, and (c) the Formal Post-Execution Critiques that must be prepared by the Commanding Officer who supervised execution of the warrants and the review of

that Critique by the Borough Executive Officer, required by Commissioner's IO-42, 8/25/03;

w. All NYPD documents reflecting what contraband, if any, was found in or near plaintiffs' dwelling, including (a) the precise location of each item of contraband, (b) the nature and quantity of said contraband;

x. All NYPD documents reflecting all investigative activities conducted by the NYPD into whether plaintiffs had personally engaged in any activity related to drugs or had any prior criminal or drug history, including any inquiry, including interviews with neighbors, and calling or attempting to visit the dwelling, both (i) prior to applying for the search warrant and (ii) prior to executing it;

y. All documents reflecting the selection and approval of the CI, or other informant upon whose word the search warrant was sought, as a registered informer;

z. All documents reflecting the number of searches conducted as a result of warrants obtained upon the word of the CI or other informant used to obtain the warrant for plaintiffs' dwelling, specifying what contraband, if any, was obtained in each search, and what convictions, if any, and for what offenses, resulted.

2. Any and all records that indicate the identity of the officers identified in response to Interrogatory No. 2.

3. Recent photographs of each current and former City employee identified in response to Interrogatory No. 2.

4.     All photographs and audio and/or visual materials, if any, in possession of defendants, their employees, or agents, relating to the incident which includes the scene of the incident, plaintiffs, plaintiffs' injuries, and items vouchered, if any.

5.   ·   All correspondence sent or received by defendants or the City personnel identified in response to Interrogatory No. 2 in connection with, or concerning, the Incident.

6.     All telephone logs, telephone records and summaries of telephone conversations concerning the Incident.

7.     All tape logs and tape recordings prepared or kept in connection with, or concerning the Incident.

8.     All summaries and reports of all meetings, conferences, and conversations held in connection with, or concerning the Incident.

9.     All case log entries prepared in connection with, or concerning the Incident.

10.     All tape recordings or transcripts of any emergency radio transmission ("radio runs") that were relayed to or from anyone and any of the defendants or any of the City personnel identified in response to Interrogatory No. 2 relating to the Incident and/or at or around the time of the Incident.

11.     With respect to any person(s) employed by defendant City of New York who witnessed some or all of the Incident and surrounding events and the City

personnel identified in response to Interrogatory No. 2, the entries of each such person in his/his records, memo books, diaries, DARs, logs, journals, notes, and calendars for those dates, and all documents memorializing such person's impressions, observations, summaries, descriptions, recounting or version of the aforementioned events.

12. The disciplinary, medical, psychological, employment and personnel files, including, but not limited to, pre-employment investigation information, command files, early intervention monitoring records, interviews, memoranda, force monitoring records or files, CCRB monitoring records or files, IAB monitoring records or files, and any other documents contained in or made apart of the personnel records or other files wherever kept, of each defendant and each officer identified in response to Interrogatory No. 2.

13. The entire file of each defendant and each officer identified in response to Interrogatory No. 2 while they were candidates at the City of New York Police Academy or other training program.

14. All documents concerning City of New York procedure, practice, rules and/or regulations in effect from the date of the incident to the present and concerning:

        a. The use of confidential informants;

        b. Obtaining a search warrant;

        c. The execution of a search warrant;

d. Constructive possession;

e. Arrests;

f. Arrest processing;

g. Use of force;

h. Handcuffing;

i. Discipline of officers for lying to any City of New York agency/department or prosecutor's office;

j. Reporting misconduct of another officer; and

k. A police officer's duty to intervene when another police officer is engaged in misconduct as defined by the City of New York Police Department guidelines/policies and local, state and federal laws.

15.     All documents, electronic materials, memoranda, directives, bulletins, policy statements and other administrative guidelines, issued subsequent to the incident that concern the City of New York's adoption of new policies, procedures, criteria, and the like, to be followed by officers with respect to:

a. The use of confidential informants;

b. Obtaining a search warrant;

c. The execution of a search warrant;

d. Constructive possession;

e. Arrests;

f. Arrest processing;

g. Use of force;

h. Handcuffing;

i. Discipline of officers for lying to any City of New York agency/department or prosecutor's office;

      j.   Reporting misconduct of another officer; and

      k.   A police officer's duty to intervene when another police officer is engaged in misconduct as defined by the City of New York Police Department guidelines/policies and local, state and federal laws.

16.    All documents pertaining to any investigation of the Incident conducted by any investigative body or agency, including, but not limited to, interviews, investigative reports, electronic recordings, findings and adjudications.

17.    All complaints of any sort made against each defendant and each officer identified in response to Interrogatory No. 2, including, but not limited to, copies of all lawsuits and litigation documents.

18.    All disciplinary records of each defendant and each officer identified in response to Interrogatory No. 2, including, but not limited to, any history of use of alleged excessive force, alleged abuse of authority, alleged lying under oath, alleged improper use of handcuffs, alleged unlawful arrest, alleged tight or improper handcuffing, alleged anger and/or control issues, alleged discourtesy, and alleged insensitivity and/or discrimination.

19.    All records and reports pertaining to performance ratings of defendants and officers identified in response to Interrogatory No. 2.

20.    All memoranda and documents detailing internal City of New York disciplinary action, letters in the personnel file, command discipline, charges and

notifications and/or warnings and admonishment against defendants and officers identified in response to Interrogatory No. 2.

21. A copy of any and all transcripts, photos, videos, audiotapes, memos, e-mails, documents or otherwise which in any way relate, include or mention plaintiffs, and/or any proceedings against defendants as a result of the incident.

22. All documents identified in response to Interrogatory Nos. 1-12.

23. All documents which constitute or concern any communication between defendants and any other person or entity, regarding any matter at issue in this litigation.

24. A copy of the table of contents from the City of New York Police Department guidelines for the years 2008 to the present.

25. All training materials and handbooks regarding:

    a. The use of confidential informants;

    b. Obtaining a search warrant;

    c. The execution of a search warrant;

    d. Constructive possession;

    e. Arrests;

    f. Arrest processing;

    g. Use of force;

    h. Handcuffing;

    i. Discipline of officers for lying to any City of New York agency/department or prosecutor's office;

    j. Reporting misconduct of another officer; and

k. A police officer's duty to intervene when another police officer is engaged in misconduct as defined by the City of New York Police Department guidelines/policies and local, state and federal laws.

26. All documents concerning any training attended by each defendant and all individuals identified in response to Interrogatory No. 2, including, without limitation, training regarding the execution of search warrants, the use of force and arrests.

27. All video surveillance and/or photos of the incident in the possession of the defendants.

28. All subpoenas, authorizations and Freedom of Information ("FOI") requests served on any party, or any individual or entity, concerning this litigation.

29. All documents received in response to any subpoenas, authorizations and FOI requests served.

30. All NYPD records reflecting plaintiffs' transportation to and incarceration at any police precinct.

31. With respect to all experts that defendants expect to call at time of trial, produce all disclosures as required pursuant to Fed. R. Civ. P. Rule 26(a)(2).

32. All documents in the possession, custody or control of the NYPD or of any other department or agency of the City of New York, reflecting all employment-related proceedings (including, but not limited to, inquiries and investigations) against or involving defendants and any other officers identified in response to Interrogatory

No. 2 whether administrative (including, but not limited to, all CCRB complaints, NYPD disciplinary matters, including command disciplines, admonishments, verbal warnings, monitoring of any kind, early intervention, modified duty, being found/pleading guilty in the trial room, suspensions and being fired, and Internal Affairs ("IAB") inquiries), civil (including, but not limited to, all civil lawsuits, whether dismissed, settled or litigated to judgment), or criminal (including, but not limited to, all arrests, grand jury reviews, indictments, informations, and convictions, whether for violations, misdemeanors or felonies), based upon either (1) the subject matter of the Complaint in this action, or (2) any allegations of (a) improper arrest or detention or failure to report or report accurately an arrest or detention, (b) false statements or falsifications of any kind, (c) abuse of authority or (d) discourtesy. For each, please include:

    a. The agency or court in which the proceeding was filed;

    b. The docket number or other identifying number of the proceeding;

    c. The date on which the proceeding was commenced;

    d. Whether the officer testified or otherwise gave a statement or statements in the proceeding, specifying whether the statement or statements were made under oath, and identifying whether the statement or statements were videotaped, audiotaped, or summarized in any memorandum or other writing; and

    e. The disposition of the proceeding. (If it is still pending, please state its present status.)

33. All documents in the possession, custody or control of the NYPD, or of any other agency or department of the City of New York, that record or reflect any review of the conduct of defendant and any other officers identified in response to Interrogatory No. 2 including, but not limited to, Command Disciplines or Formal Instructions to them, or corrective interviews with them, in connection with the incident described in the Complaint; and, if there are any such documents, identify the existence, custodian and general location of any documents in the possession, custody or control of the NYPD, or any other agency or department of the City of New York, reflecting what remedial action, if any, was taken against them with respect thereto.

34. Documents sufficient to show or explain any abbreviations, codes, acronyms or other shorthand terms that appear in any of the documents produced in response to these Requests.

35. Documents sufficient to show defendants' policies and practices concerning the preservation or destruction of documents.

36. Documents sufficient to show the NYPD's organizational structure, including but not limited to all organizational charts.

37. Documents sufficient to show the identity of every NYPD policymaker, including, but not limited to, all uniformed members holding the rank of Captain and above and all non-uniformed staff of an equivalent level of seniority between November 24, 2007 and November 24, 2010.

38.     All documents supporting the affirmative defenses that defendants asserted or intend to assert in their answer to the Complaint.

DATED:      May 27, 2011
            New York, New York

                            HARVIS & SALEEM LLP

                            _____
                            Afsaan Saleem
                            305 Broadway, 14th Floor
                            New York, New York 10007
                            (212) 323-6880
                            asaleem@harvisandsaleem.com

To:     ACC Steve Stavridis (by hand)
        New York City Law Department
        100 Church Street
        New York, New York 10007